RANDOLPH, Presiding Justice,
for the Court:
¶ 1. John O’Connor was indicted for two counts of gratification of lust: count one for the touching or rubbing of B.W. at a time when O’Connor was over the age of eighteen and B.W. was under the age of sixteen, and count two for the touching or rubbing of A.R. at a time when O’Connor was over the age of eighteen and A.R. was under the age of sixteen. A jury found O’Connor not guilty on count one. Before the Court is O’Connor’s direct appeal of his conviction on count two. O’Connor was sentenced to fifteen years, with ten years to be served and five years suspended, and five years of supervised probation. O’Con-nor challenges the trial court’s admission of evidence of a previous sexual offense involving a minor, of which he had been convicted by a Florida court. He also argues that a statement by the State during its closing argument constituted prose-cutorial misconduct warranting reversal. We find both arguments without merit, and affirm O’Connor’s conviction and sentence.
FACTS AND PROCEDURAL HISTORY
¶ 2. On Saturday, February 6, 2010, Charles “Chuck” Perry and his wife, Gale Perry, hosted a party to celebrate Chuck’s fifty-second birthday. The Perrys held the party on their property, at a restaurant and bar that they had converted from a workshop, located about one-hundred or one-hundred-fifty yards — a two- or three-minute walk — from their house.
¶ 3. Chuck’s son, Trey Perry, and his wife, Janell Perry, traveled from Florida for the party, along with O’Connor, his girlfriend, Chantal Williams, O’Connor’s *393 and Williams’s four-year-old son, Christian, and twelve-year-old B.W.,[1] who was to help with babysitting while the adults attended the party. Trey, Janell, O’Con-nor, Chantal, Christian, and B.W. all stayed at Chuck and Gale’s house for the weekend. O’Connor previously had visited Chuck’s and Gale’s house with Trey, and Chuck testified that O’Connor and Chantal were staying in the same room where O’Connor had slept on his prior visits. Kristie Kraft, Chuck’s and Gale’s daughter, and Kristie’s six-month-old daughter, Perry Kate, were also at the house that night. A.R.,[2] a longtime babysitter of Chuck’s and Gale’s grandchildren, also stayed at the house to help B.W. babysit during the party.
¶ 4. On Saturday afternoon, the adults left the house and walked to the restaurant for the party. A.R. and B.W. stayed at the house with the minor children. A.R. testified that O’Connor made repeated trips back to the house throughout the evening, “like he was looking for something.” The older children fell asleep on couches in the living room. A.R. and B.W. lay on either side of Perry Kate in a queen-size bed, ensuring that Perry Kate was safely asleep between them, and then they fell asleep.
¶ 5. Subsequently, A.R. was awakened by the presence of a fourth person in the bed. She realized that B.W. also was awake. A.R. asked B.W. who was in the bed with them. In response, B.W. shined a light from her cell phone on O’Connor and told A.R. “That’s John.” A.R. said “ Well, go get Chantal and tell her to get him out of here.’ ”[3] A.R. testified that “when [B.W.] tried to get up, she couldn’t, because he was holding on to her.” B.W. finally was able to get up, and left to get Chantal, but came back and told A.R. that she couldn’t wake Chantal. A.R. testified that B.W. again left to attempt to wake Chantal, and that:
Whenever [B.W.] left the second time to go get Chantal up, he turned over and put his hand up under my shirt, and then on by back side, and my butt. And then I jumped up and I screamed.
A.R. testified that she and B.W. then went to Chantal’s room and woke her up. Chantal testified that only B.W. entered her room to wake her up. Chantal went to the girls’ room and told O’Connor to get up. He followed her to their room, where they both went back to sleep. Chantal testified that she:
Mailed his name maybe once or twice, and he didn’t wake up. He sleeps pretty hard when he drinks. I actually went and shook him, and he looked at me, and I told him to get up, “you’re in the wrong bed,” and we went back to sleep.
¶ 6. A.R. and B.W. then sat on their bed, talking about what had happened. A.R. testified that she “posted it on Facebook” and that shortly thereafter, Kristie walked into the house. They told Kristie what had happened, and Kristie left to get Chuck. Chuck testified that, during the party, Kristie walked up to him and said that “‘the girls just called or texted and said that John O’Connor was in the bed with them, touching them in wrong ways.’ ” Chuck left the party and went straight to the room where A.R., B.W., and Perry Kate were staying. After talking to A.R. and B.W., Chuck called out “John O’Connor, and ... told him to get out of my house now.” Chuck testified that *394 O’Connor would not get out of bed, so Chuck went to the living room and decided to call the sheriffs department. He yelled to O’Connor “ Well, if you won’t get up, I’ve got somebody that will get you up.’ ” Chuck testified that:
I called the law, and, finally, he come in there, gathering his clothes up. And the lady at the sheriffs department said, “If he tries to leave to call them back.” And that’s — they did. They got in the car and tried to leave.
Chantal testified that “I went and got Mr. O’Connor. We went back to bed. And then the next time I wake up, everything is just chaos.” She testified that:
Mr. Perry came in the room and started screaming and told Mr. O’Connor to get out of bed and told him to get out of his house. And then he started screaming and cussing and went to ... [Janell’s] room, and then she had came to me and was hysterical.... And nobody really knew what was going on, and I was just trying to figure out what was going on.... John had gotten up, gotten out of the house, and he was telling us to leave.
O’Connor, Chantal, and Christian left the house. Chantal explained that “Mr. Perry told us to leave, so we were leaving” and that, when they left, she was not aware that the sheriffs department had been called.
¶ 7. Two deputies with the Yazoo County Sheriffs Department were dispatched to the Perrys’ house. As they approached the house, they received a dispatch that the suspect had left in a white vehicle. They stopped the white vehicle and took O’Connor back to the Perrys’ house for further investigation. Deputy Jason Bright testified that O’Connor was able to walk normally from his vehicle to the patrol car, along “the side of the road with a ditch there leaning.” Upon arriving at the house, Bright interviewed A.R. and B.W., took statements from Kristie and Chantal, and prepared a report.
¶ 8. O’Connor subsequently was indicted for two counts of gratification of lust: count one for the touching or rubbing of B.W., and count two for the touching or rubbing of A.R. He filed a motion for discovery, and, in response, the State disclosed the following potential witnesses, among others:
[ Witness 1] [Florida address] Witnesses [sic] will testify to prior acts of the defendant in which he crawled into her sleeping area when she was about 14 and rubbed on her vaginal area.
Jessica Atkinson[4] [Florida address] Witness will testify to defendant prior bad act of sexually molesting her when she was 9. She is also the daughter of the defendant.[5]
The State’s discovery responses did not mention any prior charges, conviction, or acquittal related to O’Connor’s prior sexual acts with minors.
¶ 9. O’Connor filed a motion in limine to “[prohibit] any reference at trial to prior offenses with which he was charged and any prior convictions in the State of Florida or elsewhere....” At a pretrial motion hearing, the trial court denied the motion, finding as follows:
The law is pretty clear in Mississippi that evidence of a sexual offense, other than the one charged, which involved another victim other than the victim *395 charged, is admissible subject to the reason for the attempt to admit it and subject to the weighing under [Mississippi Rules of Evidence] 404 and 408....
Basically, my understanding from the State is that this information will be attempted to be admitted to show common scheme of plan, motive absence mistake. It [can’t] be admitted to show conformity that he did it before, so he’s doing it again. Can’t go to character.... [T]he Court finds that the probative value ... to show absence of mistake or common scheme o[r] plan outweighs any substantial prejudice.
¶ 10. Trial began on August 18, 2011. However, when the father of a witness attacked O’Connor in the jury’s presence during trial, the trial court declared a mistrial. A second trial began on November 28, 2011.
¶ 11. At trial, the first mention of O’Connor’s previous conviction for a sexual offense involving a minor was in O’Con-nor’s opening statement. The State, during its opening statement, told the jury that it would hear from Jessica Atkinson-Hamm that, when spending the night with O’Connor’s daughter, Katie, she awoke to O’Connor touching her on numerous occasions, until she finally reported the abuse to her parents. The prosecutor did not mention a trial or conviction related to Atkinson-Hamm’s testimony. In O’Con-nor’s opening statement, O’Connor elected to inform the jury that he had gone to trial in Florida and had been convicted of a misdemeanor for a charge involving Atkinson-Hamm. Counsel further stated in opening statement that O’Connor also had been found not guilty of a separate charge in Florida involving another young girl. The prosecutor asked to approach the bench, and explained to the judge and defense counsel that the second Florida victim was not testifying, and that the State had intended only to present evidence of O’Connor’s prior sexual misconduct with Atkinson-Hamm. Defense counsel first introduced evidence (opened the door) regarding O’Connor’s prior conviction.
¶ 12. In its case in chief, the State adduced testimony from Jessica Atkinson-Hamm that O’Connor had molested her in Florida when she was between the ages of eleven and thirteen. During Atkinson-Hamm’s direct testimony, the State inquired only about O’Connor’s acts of sexual conduct and abuse upon Atkinson-Hamm. The State did not ask about any criminal charges, trials, or convictions. Atkinson-Hamm testified that O’Connor and her father had been friends, and that she had been friends with O’Connor’s daughter, Katie. Atkinson-Hamm described three specific occasions on which she had been asleep with Katie, and was awakened to find O’Connor lying with them with his hand in her (Atkinson-Hamm’s) pants. On the first two occasions, O’Connor left when Atkinson-Hamm rolled closer to Katie so that any further activity would wake O’Connor’s daughter. However, on the third occasion, Atkinson-Hamm awoke with O’Connor’s finger already inside her vagina. Atkinson-Hamm testified that, on a fourth occasion, when she was thirteen or fourteen years old, she was babysitting Christian, and awoke “with his [O’Con-nor’s] penis inside me.” She testified that “I just woke up and he was doing it, and I got him to stop.” On cross-examination by O’Connor, Atkinson-Hamm was asked about criminal charges and conviction in a Florida court, including charges involving a different victim, which resulted in a not-guilty verdict. The State again asked to approach the bench, and repeated that the State intended to present only evidence of O’Connor’s sexual misconduct related to *396 Atkinson-Hamm, and not with another Florida girl.
¶ 13. Chantal testified for the defense. During cross-examination, Chantal responded affirmatively when the State asked whether she was aware that O’Con-nor previously had been accused in Florida of molesting a twelve- or thirteen-year-old girl on a camping trip by getting into bed with her in the middle of the night, and of molesting Jessica Atkinson-Hamm by going into her bedroom in the middle of the night. She stated that “He was accused of it. I don’t believe that he actually committed those crimes.” Chantal further testified that O’Connor was charged as a result of the camping incident, but was acquitted. She did not specify the crime with which he was charged.
¶ 14. During closing argument, the State argued, without objection, as follows,:
You mean to tell me a man who, on at least two prior occasions, with two different girls, not sisters, but two different girls, two different victims, don’t really know each other — one girl going on a camping trip with him, in the middle of the night she wakes up and he’s molesting her and fingering her and all inside her panties, was that an accident? Was that a mistake? ...
And then we come back and a little while later we’ve got another victim, another victim down in Florida, Jessica. You all saw her. Best friend of the family. Treated him like that was his father because, see, when you have a problem, you ain’t got no boundaries. It doesn’t matter. It doesn’t matter if that’s your best friend’s child. You’ve got desires, lustful desires. And whenever you’ve got an opportunity, that’s basically what happens....
And then his whole thing, his whole thing that he wants to talk about, “Well, you know down in Florida, they found me guilty of a misdemeanor.” Well, shame on Florida! That’s what I say. Lewd, lascivious behavior, molesting a victim under 12 years of age when he’s 18 years [or] older, that’s a misdemean- or. I wonder if they knew afterwards he’s still doing the same thing when he gets to Mississippi.
The jury convicted O’Connor of one count of gratification of lust, and the trial court sentenced him to fifteen years, with ten years to be served and five years suspended, and five years of supervised probation.
ISSUES
¶ 15. O’Connor raises the following issues on appeal:
1. Whether the trial court abused its discretion by allowing the State to introduce evidence of O’Connor’s prior sexual misconduct with prepubescent females under Mississippi Rules of Evidence 403 and 404(b).
2. Whether the district attorney committed prosecutorial misconduct warranting reversal by making an impermissible “send-a-message” argument during closing argument.
DISCUSSION
I. The trial court did not abuse its discretion by admitting evidence of O’Connor’s prior sexual offenses involving minors.
¶ 16. We apply an abuse-of-discretion standard when reviewing a trial judge’s decision regarding the admission or exclusion of evidence. Hargett v. State, 62 So.3d 950 (Miss.2011).
¶ 17. O’Connor argues that the trial court abused its discretion by admitting evidence, which O’Connor introduced, including that he previously had been *397 charged with and (1) convicted of one charge of engaging in sexual misconduct with a minor, Jessica Atkinson-Hamm, and (2) acquitted of a separate charge of sexual misconduct with another minor, because the probative value of the evidence was significantly outweighed by its prejudicial effect. He argues that admitting the evidence that he adduced regarding sexual-misconduct accusations resulting in an acquittal “is unfair” and “raises significant concerns regarding fairness and due process.” However, “[a]n appellant cannot complain on appeal of alleged errors which he invited or induced.” HWCC-Tunica, Inc. v. Jenkins, 907 So.2d 941, 942 (Miss.2005) (citation omitted). It was O’Connor, over the State’s protestations, who introduced evidence of his prior charge that resulted in an acquittal and repeatedly referenced his conviction related to the prior wrongs of which Atkinson-Hamm testified. O’Connor’s assignment of error regarding the admission of the evidence — which O’Connor introduced — of his prior charges, acquittal, and conviction in Florida clearly is without merit.
¶ 18. As to the alleged error regarding admission of the evidence of O’Connor’s prior wrongs involving Atkinson-Hamm, we have provided that, to determine whether evidence of a prior crime, wrong, or act is admissible:
“The evidence offered must (1) be relevant to prove a material issue other than the defendant’s character [under Mississippi Rule of Evidence 404(b)[6]]; and (2) the probative value of the evidence must outweigh the prejudicial effect [under Mississippi Rule of Evidence 403].” ... [ EJvidence which passes the two-part test shall be deemed admissible under both Rule 404(b) and Rule 403.
Welde v. State, 3 So.3d 113, 117 (Miss.2009) (citations omitted). O’Connor does not argue that the evidence of his prior sexual-misconduct charges and conviction was not relevant to a noncharacter issue under Rule 404(b). Rather, he makes a Rule 403 argument: that the evidence “would be overwhelmingly prejudicial” and “the allegations lacked the probative value to overcome such prejudice.”
¶ 19. Even if O’Connor did argue that the evidence of prior sexual misconduct with minors was not offered for a noncharacter purpose under Rule 404(b), that argument still would be without merit. We have held that evidence of prior sexual misconduct is admissible under Rule 404(b) where it discloses as the defendant’s motive “a seemingly uncontrollable desire to partake in pedophilic sexual activities with young and developing female juveniles,” and where the “defendant’s means of accomplishing these activities on past occasions bear substantial resemblance to each other and with the present offense.” Gore v. State, 37 So.3d 1178, 1186 (Miss.2010) (citations omitted). We have explained that evidence of prior sexual assaults may be admitted under Rule 404(b) to show “a common plan, scheme, or system ... utilized ... repeatedly to perpetrate separate but very similar crimes[,]” such that “[o]ne could infer from these common features that defendant had a system that involved taking advantage of the parent-child relationship, particularly his control over his daughters, to perpetrate *398 abuse.” Green v. State, 89 So.3d 543, 551 (Miss.2012) (citations omitted). The evidence of O’Connor’s other crimes, wrongs, and acts was offered to show that O’Con-nor had a pattern of perpetrating abuse against prepubescent girls by violating them while they were sleeping. Testimony from prosecution and defense witnesses established that O’Connor repeatedly had placed himself in bed with young girls under similar circumstances. We conclude that the evidence of O’Connor’s other crimes, wrongs, and acts satisfied Rule 404(b), because it was relevant to the non-character issues of motive, pattern or practice, and absence of mistake, as declared in Gore and Green.
¶20. We likewise find that the trial court did not abuse its discretion by failing to exclude the evidence under Rule 403, as O’Connor contends. Rule 403 provides that “[although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.... ” Miss. R. Evid. 403 (emphasis added). We have explained that:
Under Rule 403, the exclusion of prejudicial evidence is permissive; that is, if a trial court determines that the prejudicial effect of evidence substantially outweighs its probative value, it is not obligated to exclude the evidence, but may do so at its discretion.
Ross v. State, 954 So.2d 968, 993 (Miss.2007) (citation omitted). “[T]he weighing and balancing task required by Rule 403 ... asks only that a judge rely on his/her own sound judgment.” Jones v. State, 920 So.2d 465, 476 (Miss.2006) (citation omitted). The trial judge addressed Rule 403 and concluded “that the probative value ... to show absence of mistake or common scheme of plan outweighs any substantial prejudice.” Thus, the trial judge relied on her own sound judgment and found that the probative value of the evidence—for the noncharacter purposes of absence of mistake or common scheme or plan, as recognized by this Court in Green and Gore—was not substantially outweighed by the danger of unfair prejudice. In doing so, the trial court did not abuse its discretion by admitting the evidence.
¶ 21. As evidence of O’Connor’s prior conviction and acquittal was at his own instance, we cannot declare that the trial judge erred. O’Connor’s claim challenging its admission is without merit. Nor can we find that O’Connor was prejudiced, for the jury exercised its discretion and sound judgment, finding O’Connor not guilty on one of the separate counts in this very case. He was acquitted of the charges involving B.W. As O’Connor was found not guilty of one of the counts in this case, the evidence of his conviction and other acts of sexual misconduct with other minor girls clearly did not deprive him of a fair trial.
II. The State did not commit prose-cutorial misconduct warranting reversal by commenting on O’Connor’s prior conviction in a Florida court for a sexual offense involving a minor.
¶ 22. O’Connor argues that prose-cutorial misconduct during the State’s closing argument warrants reversal. Specifically, he argues that the State made an improper “send-a-message” argument by stating the following to the jury:
And then his whole thing, his whole thing that he wants to talk about, “Well, you know down in Florida, they found me guilty of a misdemeanor.” Well, shame on Florida! That’s what I say. Lewd, lascivious behavior, molesting a victim under 12 years of age when he’s 18 years [or] older, that’s a misdemean- or. I wonder if they knew afterwards *399 he’s still doing the same thing when he gets to Mississippi.
Whether the argument was a “send-a-message” argument is dubitable at best, and the defendant offers little in logic to support same. But even if we were to assume, arguendo, that it was a “send-a-message” argument, the defendant’s claim would fail.
¶ 28. To determine whether a send-a-message argument constitutes reversible error, we apply two threshold questions, followed by a two-prong test, as set forth in Spicer v. State, 921 So.2d 292 (Miss.2006). First, we determine whether the argument is procedurally barred because defense counsel failed to object to the statement at trial. Spicer, 921 So.2d at 317. However, even in the absence of a contemporaneous objection, we will review on appeal a claim that a prosecutor made an improper send-a-message argument “if the argument is so ‘inflammatory’ that the trial judge should have objected on his own motion.” Id. (quoting Payton v. State, 785 So.2d 267, 270 (Miss.1999) (quoting Gray v. State, 487 So.2d 1304, 1312 (Miss.1986) (quoting Griffin v. State, 292 So.2d 159, 163 (Miss.1974)))).
¶ 24. For the second threshold inquiry, we consider the surrounding circumstances and ask whether defense counsel made any comments provoking the prosecution to make the challenged statement. Spicer, 921 So.2d at 318 (citing Ishee v. State, 799 So.2d 70, 75 (Miss.2001) (quoting Edwards v. State, 737 So.2d 275, 299 (Miss.1999))). In other words, we ask “whether, in light of the surrounding circumstances, defense counsel invited the statement.” Long v. State, 52 So.3d 1188, 1193 (Miss.2011) (citing Spicer, 921 So.2d at 318). However, even if the statement was unprovoked, it is not per se reversible error. Spicer, 921 So.2d at 318 (citing Payton, 785 So.2d at 271).
¶25. Noting that we had “not given further guidance to determine when it might be reversible error,” in Spicer, we adopted a two-prong test enunciated by the Ohio Court of Appeals. Spicer, 921 So.2d at 318 (citing State v. Grimes, 2005 WL 120064 (Ohio Ct.App. Jan.21, 2005)). “[T]he court must determine (1) whether the remarks were improper, and (2) if so, whether the remarks prejudicially affected the accused’s rights.” Spicer, 921 So.2d at 318 (citation omitted).
¶ 26. We need not proceed beyond the first threshold question of the Spicer analysis. O’Connor admittedly did not object to the statement that he now challenges on appeal. We repeatedly have provided that, though the failure to object contemporaneously generally waives a claim of prosecutorial misconduct during closing argument, we will review such a claim if the prosecutor’s statement was so inflammatory that the trial judge should have objected on his own motion. Spicer, 921 So.2d at 317; Payton, 785 So.2d at 270; Gray v. State, 487 So.2d at 1312; Griffin v. State, 292 So.2d at 163.
¶ 27. We find that the prosecutor’s statement was not so inflammatory that the trial judge should have objected on her own motion. Evidence that O’Connor previously had engaged in sexual misconduct with minors had been introduced at trial to show that O’Connor had a pattern or practice of engaging in sexual misconduct with prepubescent girls and had not mistakenly gotten into bed and touched A.R. and B.W. on the occasion at issue, as O’Connor had argued. Additionally, it was O’Connor— not the State — who first introduced the Florida conviction during opening argument, then questioned both Atkinson-Hamm and Chantal about it on the witness stand, and then again addressed it in closing argument, telling the jury that:
*400 Despite all of the awful things [Jessica Atkinson Hamm] said today, there in Florida ... citizens just like yourselves listened to all she had to say ... but they said ... “We find him guilty of a misdemeanor ... [T]hey want you to convict John O’Connor today ... because of something that happened in Florida three or four years ago for which he was found guilty of a misdemeanor and served his time.
Thus, after O’Connor broached the issue repeatedly throughout the trial, O’Connor dubiously now argues that the State committed reversible misconduct by addressing O’Connor’s trial arguments and solicited testimony about the prior conviction. We conclude that the prosecutor’s statements during closing argument were not so inflammatory that the trial judge should have intervened sua sponte. Accordingly, we find that the defendant waived this assignment of error by failing to object during the prosecution’s closing argument.
¶ 28. We recognize that Spicer reviewed the merits of a challenge to a prosecutor’s closing argument to which defense counsel had not contemporaneously objected without applying the proper “so inflammatory” standard. Although Spicer quoted Payton’s “so inflammatory” language, it proceeded to the merits based on its finding that the statement “track[ed] examples where this Court has found prosecutorial misconduct.” Spicer, 921 So.2d at 317. Long based its conclusion on the “so inflammatory” standard, but also referred to the standard applied in Spicer. Long, 52 So.3d at 1193-94. In Long, the defense failed to object contemporaneously, but challenged the following statement on appeal:
You know, it[’]s not a murder case, but the sale of drugs, the illegal sale of drugs is important, ladies and gentlemen. It’s important to control it, and you do so by stopping those that get caught selling drugs illegally, which is exactly what this man did. The defendant sold drugs illegally and — and he’s guilty, and it’s time for him to be held accountable. He’s selling drugs near a park as you pass through on your way to I don’t know where.... I’m just glad we caught him when we did.
Id. at 1193. The Long Court declined to proceed to the Spicer test, finding both that the challenged statement was not so inflammatory that the trial judge should have objected on his own motion and that it did “not rise to the level of those statements which this Court has found to be improper.” Long, 52 So.3d at 1193-94. The Long Court explained that:
the State’s remarks were simply reiterating the jury’s duty set forth in the jury instructions. The members of the jury were charged with the duty to make a finding of guilt based on the testimony and evidence presented at trial. By stating that the illegal sale of drugs must be controlled, “which is exactly what [Long] did,” the State was suggesting that the jury find Long guilty if they believed that the evidence and testimony had proved that Long sold drugs illegally. Therefore, the State’s closing remarks, taken in context, were not “so ‘inflammatory’ that the trial judge should have objected on his own motion.”
Id. at 1194 (emphasis added) (citations omitted). Thus, both Long and Spicer used language comparing the challenged statement with language that had been found improper, though Long ultimately based its conclusion on the longstanding “so inflammatory” standard.
¶29. We hold that the proper inquiry is not whether the language “tracks” language found to be misconduct, for such a standard would require the *401 Court prematurely to consider the merits of the claim to resolve a so-called “threshold” question. Moreover, such a standard essentially would negate the requirement of contemporaneous objecting during closing argument — if we will review, in the absence of a contemporaneous objection, any claim that a statement during closing argument was improper so long as it “tracks” language found to be misconduct, then the failure to contemporaneously object would never operate as a waiver. Accordingly, to resolve the confusion created by Spicer, we now declare that the “so inflammatory” standard is the proper threshold inquiry for appellate review of claims of prosecutorial misconduct during closing argument.
CONCLUSION
¶ 30. We conclude that the trial court did not err by admitting evidence of O’Connor’s prior sexual misconduct with girls around the same age as the alleged victim in this case. We further find that O’Connor waived his prosecutorial-miscon-duct claim by failing to object contemporaneously at trial. Accordingly, we affirm O’Connor’s conviction and sentence.
¶ 31. COUNT II: CONVICTION OF GRATIFICATION OF LUST AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED. APPELLANT SHALL SERVE TEN (10) YEARS WITH CREDIT FOR TIME PREVIOUSLY SERVED, FIVE (5) YEARS SUSPENDED, AND PLACED ON FIVE (5) YEARS OF SUPERVISED PROBATION.
WALLER, C.J., LAMAR, KITCHENS, CHANDLER, PIERCE AND COLEMAN, JJ„ CONCUR. DICKINSON, P.J., AND KING, J., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.

. B.W. was bom in October 1997.

. A.R. was born in February 1997.

.Chantal testified that, around ten or eleven o’clock, she went to sleep in the bedroom that she and O’Connor were sharing for the weekend.

. At the time of trial, Jessica Atkinson-Hamm.

. Atkinson-Hamm's trial testimony revealed that she is not O'Connor's daughter, but was close friends with O’Connor’s daughter and stayed overnight at O’Connor's home on numerous occasions.

. Mississippi Rule of Evidence 404(b) provides that:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Miss. R. Evid. 404(b).