ROBERTS, J.,
for the Court:
¶ 1. A jury sitting before the Lee County Circuit Court found Timothy Stratton guilty of two counts of sexual battery. The circuit court sentenced Stratton to two concurrent sentences of life in the custody of the Mississippi Department of Corrections (MDOC). Stratton appeals and claims that the circuit court erred when it denied his motion for a continuance. Stratton also claims the circuit court erred when it allowed the prosecution to make an improper closing argument. Finally, Stratton claims that this Court should reverse the circuit court’s judgment and remand this matter for a new trial based on the cumulative effect of the alleged errors. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Between January and September 2010, Alison[1] and her two siblings lived in Tupelo, Mississippi, with Stratton and his wife, Shirley. Shirley is Alison’s grandmother. Stratton is her step-grandfather. Although Alison was twelve years old when she and her siblings began living with Shirley and Stratton, she functioned at approximately a second-or third-grade level. Consequently, Alison was placed in special-education classes.[2]
¶ 3. Since 2008, Takisha McQueen, a support therapist employed by Region III Mental Health Center, had seen Alison once or twice a week during the school year. During early September 2010, Alison told McQueen that Stratton had rubbed her breasts and performed oral sex on her, and that she had performed oral sex on him at his direction. Alison’s revelation was unsolicited. McQueen had Alison repeat her accusation for Alison’s special-education teacher, Aleda Grissett. McQueen notified the Lee County Department of Human Services. Law enforcement was also notified. Ellen Steele, a forensic interviewer with the Family Resource Center in Tupelo, interviewed Alison.
¶ 4. Stratton was arrested and indicted for two counts of sexual battery. He pled “not guilty.” On May 21, 2012, Stratton’s two-day trial began. The prosecution called Investigator Donna Franks of the Lee County Sheriffs Department, who testified regarding her role in the investigation. The prosecution also called McQueen and Grissett. They testified that Alison was developmentally disabled, and she functioned at the approximate level of a child in elementary school. They further testified regarding Alison’s accusation that Stratton had touched her inappropriately. According to Grissett, Alison said that Stratton had fondled her breasts and performed oral sex on her, and that Alison had performed oral sex on Stratton. Grissett testified that Alison had gestured to demonstrate the act of performing oral sex on Stratton. McQueen and Grissett also relayed the graphic and detailed descriptions that Alison had used to describe ejaculation.
¶ 5. Next, the prosecution called Steele, who had conducted the forensic interview of Alison. During Steele’s testimony, the prosecution played the recording of Steele’s forensic interview. Without bela *1076 boring the graphic nature of Alison’s description, it should suffice to say that Alison relayed that Stratton had touched her inappropriately, performed oral sex on her, and directed her to perform oral sex on him. Alison also indicated that Stratton had watched pornography with her. Alison testified after Steele. Alison reiterated her consistent version of events. She testified that Stratton had engaged in some form of inappropriate behavior with her approximately eight times.
¶ 6. Finally, the prosecution called Paul Howell, the chief investigator for the Lee County District Attorney’s Office. Howell testified regarding Alison’s revelation that Stratton had scars on his lower pelvis and the side of his penis. Howell also testified that he had photographed Stratton. Howell confirmed that Stratton bore two scars that matched Alison’s description, and they were only visible if one was in very close proximity to Stratton. The inference was that Alison could have only identified Stratton’s scars if she had been intimately close to his groin. The prosecution introduced the pictures of Stratton’s scars during Howell’s testimony. The prosecution rested after Howell testified.
¶ 7. Stratton chose to testify. He denied that he had ever touched Alison inappropriately. Stratton suggested that Alison’s allegations were related to the fact that he and her older brother did not get along well. Stratton admitted that he had scars on his pelvis and his penis. According to Stratton, the scar on his pelvis was caused by his belt over time, and the scar on his penis occurred when he zipped his pants during his childhood. Stratton testified that Alison must have seen the scars when she barged into his room while he was dressing himself.
¶ 8. Next, Stratton’s wife, Shirley, testified on his behalf. Shirley did not believe that Stratton had touched Alison inappropriately. She testified that Alison made up her allegations because of the disruptive relationship between Stratton and Alison’s older brother. Shirley could not explain why Alison was able to describe sexual behavior in graphic detail. Although Stratton did not deny that he had a scar on the side of his penis, Shirley testified that he did not have any such marks. She implied that the prosecution had altered Howell’s photographs to corroborate Alison’s false recollection. Shirley also testified that she took photographs of Stratton’s pelvis and penis. According to Shirley, her photographs indicated that Stratton did not have any identifiable scars on his pelvis or the side of his penis. Those photographs were introduced into evidence during Shirley’s testimony.
¶ 9. Next, Stratton called Jason Gunn. Gunn is Shirley’s son by a previous marriage. According to Gunn, he had stayed at Shirley and Stratton’s house while Alison and her siblings lived with them. Gunn testified that he had not observed any inappropriate behavior between Strat-ton and Alison. Gunn further testified that he had asked Alison about the allegations against Stratton, and she had denied that anything inappropriate had happened. However, Gunn explained that he had asked Alison about the allegations before her revelation to McQueen and Grissett. It was unclear why Gunn felt the need to ask Alison whether Stratton had touched her inappropriately before Alison’s allegations actually came to light.
¶ 10. Afterwards, Stratton called six character witnesses who all testified that they had not witnessed anything inappropriate about the relationship between Stratton and Alison. They also testified that Stratton had a reputation for truthfulness in his community. Those witnesses included one of Stratton’s next-door neigh *1077 bors, the minister of his church, Shirley’s brother, his stepfather, his mother, and a friend of the family. After Stratton rested, the prosecution rested its case without calling any rebuttal witnesses.
¶ 11. As previously mentioned, the jury found Stratton guilty of both counts of sexual battery. The circuit court sentenced Stratton to two concurrent sentences of life in the custody of the MDOC. Following his unsuccessful post-trial motions, Stratton appeals.
ANALYSIS
I. CONTINUANCE
¶ 12. On April 30, 2012, the prosecution interviewed Alison in an effort to prepare her for Stratton’s upcoming trial. For the first time, Alison revealed that Stratton had a scar directly above the pubic area of his groin, and a distinctive scar on his penis. On May 3, 2012, the prosecution obtained a search warrant to photograph Stratton’s groin. The prosecution’s photographs corroborated Alison’s claims.
¶ 13. On May 8, 2012, the prosecution provided Stratton’s attorney with its photographs and an outline of Alison’s anticipated testimony regarding Stratton’s scars. Stratton’s trial was scheduled for May 21, 2012. Four days before trial, Stratton moved for a continuance, and the circuit court heard his motion that same day. According to Stratton’s attorney, he needed more time to prepare for the fact that Alison could identify Stratton’s scars. Stratton’s attorney also said that he was contemplating hiring an expert witness to examine Stratton’s scars. The circuit court denied Stratton’s motion on the basis that Alison’s awareness of Stratton’s sears did “not involve a medical issue ... [that] would necessitate expert testimony.”
¶ 14. On the day of trial, Stratton moved to prohibit the prosecution from introducing evidence that Alison could identify Stratton’s scars. According to Stratton’s attorney, he had “not had time to properly prepare a defense to that information.” The circuit court denied Stratton’s motion in limine because “there would be no purpose served by continuing this case because of the late production of these pictures.” The circuit court further noted that “this was not something in the file that [the prosecution] failed to disclose.”
¶ 15. On appeal, Stratton does not claim that the circuit court erred when it denied his motion in limine. However, he claims that the circuit court erred when it denied his motion for a continuance. We are mindful that the decision to grant or deny a motion for a continuance is within the circuit court’s sound discretion. Harden v. State, 59 So.3d 594, 601 (¶ 13) (Miss.2011). An appellate court “will reverse the denial of a continuance only when it appears that manifest injustice resulted from the decision.” Id.
¶ 16. Rule 9.04(A) of the Uniform Rules of Circuit and County Court requires that prosecutors disclose certain evidence that “is known or by the exercise of due diligence may become known to the prosecution.” The rule specifies that the prosecution must disclose the “[n]ames and addresses of all witnesses in chief proposed to be offered by the prosecution at trial, together with a copy of the contents of any statement ... and the substance of any oral statement made by any such witness[.]” URCCC 9.04(A)(1). Additionally, prosecutors must disclose “photographs relevant to the case or which may be offered in evidence[.]” URCCC 9.04(A)(5). If the prosecution fails to fulfill its disclosure obligations, a circuit court “may ... grant a continuance, or enter such other order as it deems just *1078 under the circumstances.” URCCC 9.04(1).
¶ 17. We find that the circuit court did not abuse its discretion when it denied Stratton’s request for a continuance. The Mississippi Supreme Court has held that “[t]he question of whether defendant had a reasonable opportunity to prepare to confront the [prosecution’s] evidence at trial depends upon the particular facts and circumstances of each case.” Traylor v. State, 582 So.2d 1003, 1006 (Miss.1991). As previously mentioned, the prosecution first became aware that Alison could identify Stratton’s scars on April 80, 2012. The prosecution quickly obtained a search warrant and executed it. Stratton was certainly aware that the prosecution had photographed his groin. Approximately eight days after the prosecution first became aware that Alison could identify Stratton’s scars, it supplemented its discovery responses. That was thirteen days before Stratton’s trial. The prosecution informed Stratton’s attorney that it planned to present evidence that Alison could identify his scars. The prosecution also provided the pictures that it planned to introduce into evidence. Nothing suggests that the prosecution sought to obtain a tactical advantage based on the timing of its disclosure. Instead, the prosecution made Stratton and his attorney aware of its intent as soon as it was able to do so. It was within the circuit court’s discretion to find that Stratton had a reasonable opportunity to prepare to confront the evidence that Alison could identify his scars.
¶ 18. Furthermore, the request for a continuance was based on the concept that Stratton’s attorney wanted a medical expert to examine Stratton’s scars. But Stratton’s attorney never elaborated regarding how he expected a medical expert to contribute to Stratton’s defense. It was within the circuit court’s discretion to find that it was unnecessary for a medical expert to opine on the presence of Stratton’s scars and the fact that Alison could identify them. It appears highly unlikely that a medical expert would have been able to provide the jury with any insight as to why Alison was able to identify and describe scars on Stratton’s lower pelvis and the side of his penis when she could have only seen those scars upon close inspection. Moreover, Stratton’s wife, Shirley, produced her own photographs of Stratton’s groin to attempt to illustrate that he did not have any identifiable scars. Because Stratton had no reasonable, articulable need for additional time, and there was no reason to conclude that the timing of the prosecution’s disclosure was to obtain a tactical advantage, we find that the circuit court acted within its discretion when it denied Stratton’s request for a continuance. Furthermore, the circuit court’s decision did not result in manifest injustice. There is no merit to this issue.
II. CLOSING ARGUMENT
¶ 19. During Stratton’s closing argument, his attorney stated:
What I did was ask Ms. Shirley Strat-ton, “I want you to go home with [Strat-ton], and I want you to do an inspection[] as only a wife can” — remember, this is his wife — “you take some photographs and you bring them back here.” ... You know she did an inspection[ ] as only a wife can. And she sat right there on that stand and told you she did not see any marks, and the photographs that she made are for your judgment. You take a look at them.
During the rebuttal portion of the prosecution’s closing argument, the prosecutor said:
You can see on these photographs — they have dates on them. And the dates are wrong. [That j]ust shows you what we *1079 are dealing with, the kind of folks we are dealing with, these kind of folks we are dealing with. These photographs have dates on them. Well, what they did, is they went and took some photographs on one day, right after we took ours, maybe three or four days after we took ours.... They didn’t like what they had. And then they went back two days later and took some more photographs. The dates are right there on them.
Stratton’s attorney objected and said, “That’s not in evidence.” The prosecution disagreed. The circuit court overruled the objection and said: “[T]he jury will recall what’s in evidence and what is not.”
¶20. Later, the prosecution said that Alison “has been horribly abused. Horribly. And the only people in the whole world that can protect her are you twelve people.” Stratton’s attorney interjected and said: “[T]hat was improper, telling the jury that they have got to protect this child in the community. That’s improper argument....” The circuit court stated that “the lawyers on either side in any case are granted ... a great deal of leeway in their final arguments to the jury, and if that’s an objection, it’s overruled.”
¶ 21. Stratton claims the circuit court erred when it overruled the objections to the prosecution’s statements. According to Stratton, the prosecution’s statements were inflammatory and improper comments on the evidence. Although Stratton never requested a limiting instruction, he argues that the circuit court committed reversible error when it did not sua sponte give such an instruction.
¶ 22. Our review involves a two-prong test. First, we must determine whether the prosecution’s remarks were improper. O’Connor v. State, 120 So.3d 390, 399 (¶ 25) (Miss.2013). If we find that the prosecution’s remarks were improper, then we must then determine “whether the remarks prejudicially affected the accused’s rights.” Id. We are mindful that the circuit court is “in the best position to determine if an allegedly] improper comment had a prejudicial effect; and therefore, absent an abuse of that discretion, [its] ruling will stand.” Holliman v. State, 79 So.3d 496, 500 (¶ 17) (Miss.2011). We note that “[attorneys have wide latitude in closing arguments.” Byrd v. State, 977 So.2d 405, 410 (¶ 14) (Miss.Ct.App.2008). Additionally, “any allegedly] improper comment must be viewed in context, taking the circumstances of the case into consideration.” Id.
¶ 23. In his appellate brief, Stratton claims that both comments at issue “were improper under current Mississippi case law.” Stratton cites Sheppard v. State, 777 So.2d 659, 661 (¶ 7) (Miss.2000), for the principle that prosecutors are prohibited from using tactics that are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury. Stratton further cites Sheppard for the principle that attorneys cannot state facts that are not in evidence.
¶ 24. In Sheppard, a prosecutor’s closing argument included the statement that “if the jury voted to acquit, he wanted them to call him and explain their rationale [for] finding the defense witnesses credible, so he could explain it to the victim’s family.” Id. at (¶ 6). The supreme court held that “[t]he natural and probable effect of the prosecutor’s improper statements was the creation in the minds of the jurors of an extra-legal burden of accountability to the State prejudicial to the rights of the accused.” Id. at 662 (¶ 10). We do not find that either of the statements at issue is comparable to the improper statement in Sheppard. Although the prosecution appealed to the jury to protect the victim, and the jury’s function was to determine whether there was evidence beyond a rea *1080 sonable doubt that Stratton was guilty of the charges against him, we do not find that the prosecution’s comments prejudi-cially affected Stratton’s rights. The circuit court instructed the jurors that they must base their decision on the evidence, and they “should not be influenced by bias, sympathy, or prejudice.” It is “well-settled law [that] jurors are presumed to follow the instructions given by the court.” Harris v. State, 37 So.3d 1237, 1247 (¶ 37) (Miss.Ct.App.2010). However, we caution prosecutors to be mindful of the supreme court’s warning that “[a]n appeal to emotion or for sympathy for a victim can reach a point at which it is prejudicial.” Bell v. State, 725 So.2d 836, 851 (¶ 40) (Miss.1998).
¶ 25. Regarding the prosecution’s comments about the dates that appeared on the photographs, we note that those photographs had been introduced into evidence. “During closing argument, a lawyer is entitled to argue his or her case drawing all rational inferences that come from the evidence presented in the courtroom.” Easter v. State, 83 So.3d 442, 443 (¶ 5) (Miss.Ct.App.2011). The dates were on the photographs. The prosecution was allowed to draw rational inferences from the dates. It was not irrational to compare the dates on the photographs that Stratton introduced and infer that he took more photographs because he was unsatisfied with the initial ones. Additionally, the circuit court instructed the jury that “[arguments, statements, and remarks of counsel are intended to help you understand the evidence and apply the law, but [they] are not evidence.” We do not find that the prosecution’s remarks about the dates on the photographs in evidence prejudicially affected Stratton’s rights. It follows that this issue is meritless.
III. CUMULATIVE EFFECT OF ERRORS
¶ 26. Finally, Stratton claims that the cumulative effect of the errors at trial mandates that he receive a new trial. We have not found that the circuit court committed any errors. It follows that there can be no cumulative effect of errors that do not exist. Brown v. State, 890 So.2d 901, 922 (¶ 84) (Miss.2004). Consequently, there is no merit to this issue.
¶ 27. THE JUDGMENT OF THE LEE COUNTY CIRCUIT COURT OF CONVICTION OF TWO COUNTS OF SEXUAL BATTERY AND SENTENCE ON EACH COUNT OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE SENTENCES TO RUN CONCURRENTLY WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEE COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. We use a fictitious name to protect the victim's identity.

. According to Alison’s special-education teacher, Alison functioned at the approximate level of a six-or seven-year-old.