# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-KA-01195-SCT

*PERCY HARRIS a/k/a PERCY LE-RON HARRIS*
*a/k/a PERCY L. HARRIS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/20/2022 |
| TRIAL JUDGE: | HON. CLAIBORNE McDONALD |
| TRIAL COURT ATTORNEYS: | LOUIS IVAN BURGHARD |
| | LAUREN BARNES HARLESS |
| | KIMBERLY THOMAS HARLIN |
| | HALDON J. KITTRELL |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY:  W. DANIEL HINCHCLIFF |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  LAUREN G. CANTRELL |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/29/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KING, P.J., CHAMBERLIN AND ISHEE, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.    Percy Harris appeals his conviction for first-degree murder and sentence of life imprisonment. On July 27, 2021, Harris was indicted for the first-degree murder of his wife, Shauna. On October 17, 2022, Harris's jury trial commenced. On October 20, 2022, the jury returned a guilty verdict, and the court sentenced Harris to life imprisonment. This Court affirms Harris's conviction and sentence.

**FACTS AND PROCEDURAL HISTORY**

¶2. Percy Harris was a staff sergeant in the Mississippi Army National Guard stationed in Magee. In 2018, Harris married Shauna Wright. At his trial, Harris elected to testify. According to Harris, he and Shauna were experiencing marital difficulties leading to the incident on December 22, 2019. That evening, Harris returned home from work, greeted his stepson, and noticed that his wife was on the phone. Passion May, who was on the phone with Shauna, testified that they ended their conversation at 10:28 p.m. When Shauna got off the phone, she and Harris began to argue about who would pay the light bill. Harris testified that he and Shauna continued to argue as he lay down in bed.

¶3. According to Harris, Shauna was next to him in their bed and he was facing away from her when he heard her say, "Oh, M.F., you done?" and he heard his gun cock. Harris then claimed that he turned around to see Shauna pointing the gun at herself. Harris testified that he lunged for the gun and that it went off, injuring his left hand. Harris testified that he did not realize his wife had been shot at the time, and he went into the bathroom to retrieve a towel to wrap his injured hand. As he tended to his wound, Harris heard "a thump in the tub" and turned around to find that Shauna had crawled into the tub.

¶4. At this point, Harris became aware that Shauna was also suffering from a gunshot wound. Harris testified that Shauna was breathing heavily, and she said, "I'm sorry." Harris stepped into the tub, took the gun out of her hand and placed it on the side of the tub. Harris then heard his stepson on the phone with 911, telling the police the home address and "that he heard some pops."

2

¶5. Harris's stepson M.K. also testified at trial. M.K.'s mother, Shauna, had picked him up from his father's house on December 22, 2019. M.K. was in his room playing a video game when his friend called him. M.K. took off his headphones to answer the phone, and when he did, he heard a noise like a gunshot. M.K. testified that he heard his mother "begging [Harris] not to shoot" and that he called 911. M.K. stated that he heard three gunshots in total.

¶6. M.K. made two calls to 911. The first call was made at 10:44 p.m., and the second was made at 10:51 p.m. After the first 911 call, M.K. testified that Harris came into his room and asked what he was doing. M.K. asked Harris if his mother had called for him; Harris responded that she was asleep and then Harris exited the room. M.K. noticed that Harris had a scratch on his arm. M.K. then left his room and got a knife. M.K. testified that he remained in the house because he feared that Harris might hurt his younger siblings who were also in the house. On the second 911 call, M.K. requested that the police not use sirens when they approached the house because he was afraid of alarming Harris.

¶7. When the police arrived, M.K. met them outside. Deputy Chris Williamson was the first officer to arrive on scene. After calling for backup, Deputy Williamson entered the home along with Deputy Michael Shannon. The officers announced themselves several times, and Harris exited the bedroom and walked into the living room. Deputy Williamson testified that Harris's left hand was wrapped in a towel. According to Deputy Williamson, Harris stated, "I think my wife shot herself." At that time, the officers handcuffed Harris and read him his

3

*Miranda*[1] rights. After Harris was secured, Deputy Williamson followed an apparent trail of blood beginning in the master bedroom that led to the master bathroom and found Shauna in the tub with no signs of life. When medical aid arrived, Shauna was confirmed to be deceased.

¶8.     Investigator Jack Rayner led the investigation of the case. Once Harris was released from the hospital for the treatment of his left hand injury, Investigator Rayner conducted two separate interviews with him, both of which were recorded and played for the jury. Throughout the interviews, Harris maintained that Shauna shot herself and that he sustained his hand injury by attempting to block the first shot. During the interviews and his testimony at trial, Investigator Rayner called attention to several discrepancies between Harris's version of events and the crime scene. Shauna had three close contact gunshot wounds to the head and four stab-type wounds to the head. Harris could not account for the stab wounds or the fact that the close-contact gunshot wounds meant that there was no barrier (such as a hand blocking a bullet) between Shauna and the barrel of the gun when it was fired. Investigator Rayner also questioned whether Shauna could have crawled into the tub on her own while still holding the gun given her injuries. One of the bullets punctured Shauna's voicebox, which, according to Investigator Rayner, would have made it near impossible for her to speak. Investigator Rayner also noted that Harris changed clothes after he claimed Shauna shot herself and before the police arrived. Additionally, Harris testified and told Investigator Rayner that he only heard two shots when, in fact, Shauna was shot three times.

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

¶9.     Following the first interview with Investigator Rayner, Harris was charged with the first-degree murder of Shauna. Around July 15, 2020, Harris's attorney informed Investigator Rayner that there were security cameras in the home on the night of the incident. Harris claimed that a hidden security camera was sitting on the dresser in his bedroom and that it had recorded the events of December 22, 2019, and would prove that Shauna committed suicide. Investigator Rayner, Harris, Harris's attorney, and Harris's sister went to the home to search for the security cameras on July 15, 2020. While at the residence, Harris's sister found one of the two security cameras and turned it over to Investigator Rayner. A review of the camera's contents did not reveal any exculpatory evidence. No other camera was found. Investigator Rayner testified that he was familiar with hidden security cameras and that he would have noticed such a camera and collected it for evidentiary purposes had it been present in the bedroom on the night of the incident. When asked why he waited so long after his arrest to disclose the cameras, Harris replied that he did not trust Investigator Rayner because he had informed Harris that he did not believe Harris's version of the events.

¶10.    On July 27, 2021, Harris was indicted by the Lamar County Grand Jury for the murder of Shauna. On October 17, 2022, Harris's jury trial commenced. On October 20, 2022, the jury deliberated and returned a guilty verdict. Following the jury's verdict, the court sentenced Harris to life imprisonment. Harris appeals.

## DISCUSSION

¶11.    The single issue[2] on appeal is whether the prosecutor committed misconduct in her

_____

[2]Harris filed his own supplemental brief pursuant to Mississippi Rule of Appellate Procedure 28(b) in which he raised ten additional issues. Harris's supplemental brief,

closing arguments. Harris failed to make a contemporaneous objection to the prosecutor's comments at trial. This Court has held, however, that "though the failure to object contemporaneously generally waives a claim of prosecutorial misconduct during closing argument, we will review such a claim if the prosecutor's statement was so inflammatory that the trial judge should have objected on his own motion." *O'Connor v. State*, 120 So. 3d 390, 399 (Miss. 2013) (citing *Spicer v. State*, 921 So. 2d 292, 317 (Miss. 2006), *abrogated by O'Connor*, 120 So. 3d at 400-01; *Payton v. State*, 785 So. 2d 267, 270 (Miss. 1999); *Gray v. State*, 487 So. 2d 1304, 1312 (Miss. 1986); *Griffin v. State*, 292 So. 2d 159, 163 (Miss. 1974)). This Court finds that the comments of the prosecutor were not so inflammatory that the trial court should have objected on its own motion and, therefore, Harris's failure to object at trial acts as a procedural bar on appeal.

¶12.    Harris argues that comments made by the prosecutor in her closing argument constituted prosecutorial misconduct requiring reversal and a new trial. Particularly, Harris

---

however, fails to satisfy Mississippi Rule of Appellate Procedure 28(a)(7). Rule 28(a)(7) states that "[t]he argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on." Harris's supplemental brief only cites two cases from the Court of Appeals, neither of which is relevant to his argument or binding on this Court. This Court has held that "[f]ailure to cite relevant authority obviates the appellate court's obligation to review such issues." *Cork v. State*, 329 So. 3d 1183, 1190 (Miss. 2021) (internal quotation marks omitted) (quoting *Arrington v. State*, 267 So. 3d 753, 756 (Miss. 2019)); *see also Patton v. State*, 109 So. 3d 66, 76 (Miss. 2012) ("We also decline to consider this issue due to Patton's failure to make a meaningful argument supported with adequate citation of authority." (citing *Randolph v. State*, 852 So. 2d 547, 558 (Miss. 2002))); *Randolph*, 852 So. 2d at 558 ("In the absence of meaningful argument and citation of authority, this Court generally will not consider the assignment of error." (internal quotation marks omitted) (quoting *Govan v. State*, 591 So. 2d 428, 431 (Miss. 1991))). For this reason, and because we find that the issues lack merit, this Court declines to review the additional issues raised in Harris's supplemental brief.

takes issue with the following statements made by the prosecutor during her closing argument:

> I've been coming in this courtroom, walking up and down right here on this floor for twenty years asking you, the jurors of Lamar County, to force people like Percy Harris, and that's what I'm asking you to do today, force Percy Harris to take responsibility for what he did that night because he won't do it. He won't do it. He can't even come up with a real tear when we showed those pictures this week. Now, [M.K.] could, couldn't he?

Harris argues that these statements contained both a send-a-message argument and a golden-rule argument, commented on the exercise of his right to trial and needlessly inflamed the jurors' emotions, all of which violated Harris's fundamental right to a fair trial.

¶13.    Generally, "[a]ttorneys are afforded wide latitude in arguing their cases to the jury but are not allowed to employ tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury." *Ross v. State*, 954 So. 2d 968, 1101 (Miss. 2007) (citing *Sheppard v. State*, 777 So. 2d 659, 661 (Miss. 2001)). "A 'send the message' argument is one that encourages 'juries to use their verdict to "send-a-message" to the public or to other potential criminals,' instead of 'render[ing] a verdict based solely on the evidence introduced at the trial of that case.'" *Terrell v. State*, 237 So. 3d 717, 734 (Miss. 2018) (alteration in original) (quoting *Brown v. State*, 986 So. 2d 270, 275 (Miss. 2008)). A golden-rule argument asks jurors to place themselves in the position of a party to the case. *Holliman v. State*, 79 So. 3d 496, 500 (Miss. 2011). This Court has held both arguments to be impermissible and has warned that their use may result in reversible error. *Payton v. State*, 785 So. 2d 267, 270-71 (Miss. 1999); *Holliman*, 79 So. 3d at 500. Comments on a defendant's exercise of a constitutional right and unnecessarily inflammatory tactics utilized

7

by the prosecution have also been condemned by this Court. *See Sheppard*, 777 So. 2d at 661; *Griffin v. State*, 557 So. 2d 542, 553 (Miss. 1990); *Shell v. State*, 554 So. 2d 887, 900 (Miss. 1989), *rev'd on other grounds by Shell v. Mississippi*, 498 U.S. 1, 111 S. Ct. 313, 112 L. Ed. 2d 1, 1 (1990).

¶14.    Harris argues that an impermissible send-a-message argument was made by the prosecutor when she asked the jurors to force Percy Harris to take responsibility for his crime. Harris argues that this statement asked the jury "[t]o send a message to all of Lamar County, that the historical roll call of homicides in Lamar County need [to] be vindicated by this jury, in this trial."  As stated above, a send-a-message argument is one that asks the jury to issue a verdict to send a message rather than based on the evidence adduced at trial. *Terrell*, 237 So. 3d at 734. The prosecutor's statement did not constitute a send-a-message argument in this case. In *McGrath v. State*, 271 So. 3d 437, 443 (Miss. 2019), this Court found that the prosecutor did not commit "misconduct by pointing at [the defendant] and asking the jury to hold [him] accountable for his actions with a guilty verdict." The Court held that "[w]hat the State argues was nothing more than 'simply reiterating the jury's duty set forth in the jury instructions.'" *Id.* at 444 (quoting *Long v. State*, 52 So. 3d 1188, 1194 (Miss. 2011)). The comments made by the prosecutor in the present case are indistinguishable from those made in *McGrath* and, therefore, require the same result.

¶15.    Harris posits that the prosecutor's comments also contained an implied golden-rule argument by asking the jury "to place themselves in the shoes of twenty years worth of victims." The statement made by the prosecutor regarding twenty years was in reference to

her experience prosecuting in Lamar County. We fail to see how the comment asked the jury to place themselves in the position of twenty years worth of victims, and we find that this argument lacks merit.

¶16.    Harris argues that by asking the jury to hold him accountable because he would not accept responsibility for his crime, "[t]he prosecutor clearly argues that Harris should be held accountable for coming to trial[.]" The statement made by the prosecutor asking the jurors to hold Harris accountable did not comment on his right to a trial. Instead, it asked the jury to perform its duty to deliberate on the evidence presented and return a verdict based on that evidence. *See McGrath*, 271 So. 3d at 444. We find that this argument lacks merit.

¶17.    Finally, Harris argues that the prosecutor used needlessly inflammatory tactics by pointing to Harris's lack of tears and contrasting that to the emotionality of M.K. during the trial. This Court has held that a prosecutor may comment on the defendant's "credibility and demeanor" when the defendant chooses to testify thereby placing their credibility and demeanor before the jury. *Thorson v. State*, 895 So. 2d 85, 113-14 (Miss. 2004). In *Thorson*, this Court held that "the State did not err in commenting on the defendant's lack of remorse" because the defendant chose to testify and therefore the prosecutor was permitted to comment on the defendant's credibility and demeanor. *Id.* In the present case, Harris chose to testify, thereby placing his credibility in contention and allowing the prosecutor to comment on his demeanor and credibility as a testifying witness.

**CONCLUSION**

¶18.    Because Harris failed to demonstrate that the prosecutor's statements were so

9

inflammatory to warrant review despite the lack of a contemporaneous objection, this issue is procedurally barred on appeal. Therefore, this Court affirms Harris's conviction and sentence.

¶19.    **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR.**