PIERCE, Justice,
for the Court:
¶ 1. Dennis Jerome Beal allegedly offered Lieutenant Tommy Jones, a Madison County Sheriffs Department deputy, $10,000 in hopes that Jones could make Beal’s pending drug charge disappear. On April 28, 2010, Beal was indicted by a Madison County grand jury for bribery as a habitual offender. On September 15, 2010, a Madison County jury unanimously found Beal guilty of bribing Jones, and the trial court sentenced Beal to ten years in prison as a nonviolent habitual offender. Beal appeals his conviction, and this Court reverses and remands.
FACTS AND PROCEDURAL HISTORY
¶ 2. The following facts were gleaned from the testimony and evidence presented at trial. Beal sold a confidential informant, who was working for the Madison County Sheriffs Department (“MCSD”), cocaine on March 28, 2009, but Beal was not immediately arrested. The MCSD chose to arrest Beal later when he visited his probation officer. Jones took custody of Beal, and during transit, Jones gave Beal an opportunity to “help his self.” At this time, Beal did not offer any information to “help his self,” but Jones gave Beal his cell number in case Beal changed his mind.
¶ 3. On October 21, 2009, Beal contacted Jones by phone to “meet up” and talk. Later, they met at the Capitol Body Shop in Ridgeland, Mississippi, to discuss what Beal could do to “help his self.” At this meeting, Jones testified that he informed Beal about what needed to be done, but that Beal explained that he had nothing to offer because several people knew Beal had been charged and arrested in Madison County. As the conversation continued, Beal asked Jones if he could give Jones money to “secure his freedom.” Beal offered to pay Jones about $5,000, but no money ever changed hands at this meeting. When the conversation was coming to a close, Jones informed Beal that the proposition to secure his freedom was not “out of the question.” Once Beal left, Jones contacted his superiors to inform them about the state of the investigation.
¶ 4. As the investigation continued, Beal contacted Jones on November 23, 2009, to meet again and talk. Jones agreed to meet Beal at the Lowe’s in Madison, Mississippi, and during this recorded conver *890 sation, Beal upped the ante and offered Jones $10,000, which Beal would pay off as a part of a “program.” However, no money changed hands during this meeting either, and the investigation continued.
¶ 5. On February 5, 2010, Beal and Jones met again at the Lowe’s in Madison, Mississippi. But this time, Jones and his superiors had decided to arrest Beal after the meeting, because it seemed apparent from telephone communications between Jones and Beal that money would change hands at this meeting. The meeting took place at about nine o’clock at night, and when Beal arrived, he entered Jones’s vehicle. Once the conversation began, Beal handed Jones an envelope containing money. The envelope contained only $4,000, rather than $10,000, but Beal said he would pay another $6,000 later when he had acquired more money from his car-selling business. Once Beal left the scene, MCSD deputies arrested him.
¶ 6. On April 28, 2010, a Madison County grand jury indicted Beal for bribery as a habitual offender under Mississippi Code Section 99-19-83. Beal moved to dismiss the indictment, claiming that there was a problem with the charging language of the indictment as it related to Beal’s habitual-offender status. The Madison County District Attorney’s office (“MCDA”) admitted, pretrial, that the indictment language included a scrivener’s error. The trial court denied the motion to dismiss the indictment and permitted the MCDA to amend the indictment to reflect that Beal qualified as a nonviolent habitual offender under Mississippi Code Section 99-19-81, rather than a violent habitual offender under Section 99-19-83. Thus, the trial court denied the motion to dismiss the indictment. The trial court issued an order on September 14, 2010, before trial began, amending the indictment to reflect the appropriate habitual-offender status.
¶ 7. The trial began on September 14, 2010, and with its first witness, the State elicited testimony regarding a videotape that allegedly depicted Beal selling cocaine to a confidential informant. Beal’s counsel objected, stating that the videotape was “not relevant here.” However, the trial court overruled that objection, finding that the State was only describing “the process of the drug purchase.” The State continued with its line of questioning and elicited testimony gleaned from the contents of the videotape. Later, as the trial ensued, Beal’s counsel moved to view and publish the videotape to the jury upon the belief that the videotape did not show what the State’s witness claimed. However, the State objected, arguing that the videotape was not relevant. The trial court ruled that there was no reason why Beal’s counsel could not view the videotape, but found that the videotape would be “substantially prejudicial” to the defense if the jury saw the videotape and, thus, excluded it. At the conclusion of a two-day trial, the jury unanimously found Beal guilty of bribery.
¶ 8. As a result, the trial court sentenced Beal to ten years without early release, probation, or parole. During the sentencing hearing, Beal’s counsel moved ore ten-us for a judgment notwithstanding the verdict, but the trial court informed Beal’s counsel that it was inappropriate for the court to take up such motion until sentencing was concluded, suggesting that a written motion be filed. On October 1, 2010, Beal filed a motion for judgment notwithstanding the verdict or in the alternative, a new trial, and the trial court denied that motion on January 11, 2011. On the same day, Beal’s counsel filed a notice of appeal. On appeal, Beal alleges:
I. The trial court erred by not quashing the indictment because the charging language illustrates im *891 proper influence bearing upon the grand jury;
II. The trial court erred in allowing the State to amend the indictment;
III. It was prejudicial error for the trial court to deny the defendant’s request that the State deliver a copy of the videotape for the defendant’s viewing;
IV. It was prejudicial error for the trial court to allow the State to establish motive by eliciting testimony from its witness concerning a videotape the defendant had not viewed;
V. It was prejudicial error for the trial court to allow the State to make improper and inflammatory opening and closing statements to the jury that were misleading;
VI. The trial court erred in not finding the defendant entrapped as a matter of law.
STANDARD OF REVIEW
¶ 9. When reviewing the grant or denial of a motion to dismiss an indictment, this Court employs a substantial-evidence/manifest-error standard of review,[1] but when a defendant challenges the legal sufficiency of an indictment, this Court employs a de novo standard of review.[2] Additionally, this Court applies an abuse-of-discretion standard of review when considering whether a trial court erred in admitting or excluding evidence.[3] Moreover, this Court refuses to overturn a jury verdict unless it is “so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”[4]
ANALYSIS
I. Whether the trial court erred by not quashing the indictment because the charging language illustrates improper influence bearing upon the grand jury.
II. Whether the trial court erred in allowing the State to amend the indictment.[5]
¶ 10. Beal argues that the charging language of the indictment for the bribery charge was fatally defective because it unduly influenced the grand jury, and the trial court erred in allowing the State to correct the charging language before trial. The State proffers, however, that these issues are procedurally barred since those issues were not presented to the trial court initially. After having reviewed the record in its entirety, we find that the question of whether the court erred with regard to the charging language of the indictment and amendment of that language has been properly preserved for appeal. Beal clearly contested those issues before the trial court by moving to dismiss the indictment pretrial and by making objections regarding the indictment during trial.
¶ 11. Mississippi law is clear— “an indictment should be a plain, concise, and definite written statement of the essential facts constituting the offense *892 charged and should fully notify the defendant of the nature and cause of the accusations against him.”[6] “Formal and technical words” are unnecessary so long as the crime can be “substantially” “described” without such language.[7] But, it is recommended that the code section under which the indictment is drawn be used.[8] And amendments of indictments are permissible as to form but not as to the substance of the crime charged.[9] Ultimately, indictments are subject to amendment so long as the amendment does not materially alter the facts that “are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood as to prejudice the defendant’s case.”[10]
¶ 12. Recently, this Court decided Gowdy v. State, and in that case, the Court found that an amendment to an indictment prior to sentencing but after conviction was improper.[11] This Court found that the State cannot amend an indictment to seek a greater sentence than one associated with the crime originally charged, as that would constitute an unfair surprise to the accused.[12] Therefore, Gowdy is substantially distinguishable from the facts of this case before us today, because here, an amendment to the indictment was made before the trial began, and the amendment did not seek a greater sentence than the one originally charged. Consequently, this Court must determine whether the State can amend an indictment before trial to seek a lower sentence enhancement than one originally charged.
¶ 13. Nathan v. State[13] is directly on point with the issues raised here. In Nathan, the State charged Nathan as a habitual offender in accordance with Mississippi Code Section 99-19-83.[14] Section 99-19-83 states:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.[15]
The State introduced evidence from the Mississippi Department of Corrections to prove that Nathan had been a habitual offender.[16] However, Nathan’s attorney *893 successfully argued that the proof failed to meet the requirements of Section 99-19-83.[17] The trial court then permitted the State to amend the indictment to charge Nathan as a nonviolent habitual offender under Mississippi Code Section 99-19-81.[18] Section 99-19-81 states:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.[19]
The Nathan Court found that Nathan had been indicted under Section 99-19-83, which was sufficient to apprise Nathan that the State was seeking to impose the habitual-offender status, and thus, the amendment allowed for a lesser sentence.[20] Moreover, the amendment affected only sentencing and not the underlying crime with which Nathan was accused.[21] Consequently, the amendment made to Nathan’s indictment was permissible because it did not materially alter the facts underlying the indictment, and the amendment did not prejudice the defendant.[22]
¶ 14. Here, as in Nathan, Beal originally was indicted as a habitual offender under Section 99-19-83, and Beal’s counsel made the trial court aware that the charging language of the indictment contained an error through a motion to dismiss. When Beal’s pretrial motion to dismiss was heard by the trial court, the State admitted that the indictment contained a scrivener’s error and that Beal met the habitual-offender status under Section 99-19-81 instead of the habitual-offender status under Section 99-19-83. The trial court correctly allowed — a decision made by both rule and law — the State to amend Beal’s indictment to properly reflect the appropriate habitual-offender status.[23]
III. Whether it was prejudicial error by the trial court to deny the defendant’s request that the State deliver a copy of the videotape for the defendant’s viewing.
IV. Whether it was prejudicial error for the trial court to allow the State to establish motive by eliciting testimony from its witness concerning a videotape the defendant had not viewed.[24]
¶ 15. Beal asserts that the trial court committed prejudicial error by denying his request to publish the videotape to the jury, since the State had elicited testimony regarding the videotape in its case in chief. In situations where admissibility and relevancy of evidence are questioned, the trial court possesses a vast amount of *894 discretion, and unless the trial court abuses that discretion in a manner that injures the accused, this Court will not reverse that ruling.[25] Here, this Court finds that the trial court abused its discretion regarding the videotape.
¶ 16. Although Beal couches the error made by the trial court on the issue of the videotape as a discovery violation, this Court cannot find one. An attorney must provide a written request for discovery.[26] Moreover, if the prosecution attempts to introduce evidence not provided in discovery, the defense must object for that reason and be given an opportunity for a continuance to review the material in question.[27] Beal’s attorney at trial, Earnestine Alexander, entered the case five days before trial. Admittedly, Alexander failed to submit a written request to the State for discovery, and instead, chose to rely upon piecemeal discovery gathered through the use of Beal’s family members, court clerks, and Beal’s former attorneys. Moreover, Alexander argued in Beal’s pretrial motion to dismiss that the videotape contained “absolutely nothing.” And at trial, Alexander informed the court that she chose not to view the videotape prior to trial because she did not see a reason to do so. On appeal, Alexander argues that the videotape was not provided to her in discovery by the State, yet the record is devoid of any instance in which Beal or Alexander was denied the right to view the videotape. In review of the record in this case, it appears that Beal and Alexander had access to the videotape and chose not to view it. Thus, it is seems incongruent to allow Beal to assert a discovery violation in this regard. Nevertheless, this Court still must address the relevancy of the videotape and whether Beal’s right to confrontation was violated.
¶ 17. Recently, this Court ruled:
As long as the trial court remains within the boundaries of the Mississippi Rules of Evidence, its decision to admit or exclude evidence will be accorded a high degree of deference. But error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected.[28]
The videotape was not relevant to the underlying charge of bribery, but the State opened the door for the videotape to become relevant when it decided to question Jones about the contents of the videotape. Essentially, the trial court permitted Jones to testify to facts not in evidence, since the State did not admit the videotape into evidence. And later, when Beal decided to show the videotape to the jury, his right to confront the testimony of Jones was violated.
¶ 18. As a result, the trial court committed prejudicial error by allowing the State’s witness to testify to the contents of the videotape and by prohibiting the defense from showing the jury the videotape. This Court respects the trial court’s caution on this issue in finding the videotape more prejudicial than probative, but suggests that if the defense wishes to err in this regard, then that is its unfortunate choice to do so. The videotape became relevant once the prosecution elicited testimony from the contents of the tape, and therefore, the defense should have been allowed to show the videotape to the jury even if it did show Beal selling drugs.
*895 V. Whether it is prejudicial error for the trial court to allow the State to make improper and inflammatory opening and closing statements to the jury that were misleading.
¶ 19. Beal asserts that the trial court erred by allowing the State to make improper and inflammatory opening and closing statements that were misleading to the jury. Yet, the State contends that this argument is barred because Beal made no objections to these alleged improper and inflammatory statements at trial. And “failure to make a contemporaneous objection constitutes waiver of that issue on appeal.”[29] We agree. Beal’s contentions are waived, and thus, without merit.
VI. Whether the trial court erred in not finding the defendant entrapped as a matter of law.
¶20. Beal argues that the trial court should have found that he was entrapped as a matter of law. However, the trial court gave an entrapment instruction and submitted the question to the jury. The State insists that entrapment is a question of fact for the jury to decide. And as this Court has held, entrapment is a jury question.[30] Entrapment is an affirmative defense that must be proven by the defendant.[31] Therefore, this Court finds that the trial court did not err in allowing entrapment to be decided by the jury.
¶ 21. Entrapment occurs when an individual acts to induce or lead another person to commit a crime not originally envisioned by that person for the purposes of trapping that person for the offense committed.[32] “Before a defendant can raise the defense of entrapment, he or she is required to show evidence of government inducement to commit the criminal act and a lack of predisposition to engage in the criminal act prior to contact with government agents.”[33] Government inducement and predisposition are questions of fact for the jury to decide, not the trial court.[34] Mississippi places great weight on the jury’s determination in this regard:
Where the jury resolves the point against the defendant, he is generally out of luck on appeal. On the other hand, having in mind our limited scope of review of jury verdicts, where the offense has in fact been induced by an agent of the state and where the accused, prior to the inducement, was not predisposed to commit the type of offense charged, entrapment is shown and the defendant must be discharged.[35]
Consequently, “this Court will only overturn a jury verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”[36]
¶ 22. Clearly, Mississippi has well-defined standards on what constitutes entrapment. Yet, in Beal’s brief, he *896 attempts to link entrapment to the indictment without discussing whether the State induced him to bribe Jones or whether he was predisposed to commit the offense of bribery. Because entrapment is a question of fact for the jury, Beal’s argument is without merit.
CONCLUSION
¶ 23. The trial court properly permitted the State to amend the indictment before trial. Nevertheless, the trial court committed prejudicial error regarding the videotape, as it became relevant to the case once the State opened the door by eliciting testimony about its contents. However, Beal’s arguments regarding opening and closing statements and entrapment are without merit. Therefore, Beal’s conviction and sentence are reversed, and this case is remanded to the trial court for a new trial consistent with this opinion.
¶ 24. REVERSED AND REMANDED.
WALLER, C.J., CARLSON, P.J., RANDOLPH, KITCHENS, CHANDLER AND KING, JJ., CONCUR. DICKINSON, P.J., AND LAMAR, J„ CONCUR IN RESULT ONLY.

. Foreman v. State, 51 So.3d 957, 959 (Miss.2011).

. Quang Thanh Tran v. State, 962 So.2d 1237, 1240 (Miss.2007).

. Gilbert v. State, 48 So.3d 516, 523 (Miss.2010).

. Long v. State, 52 So.3d 1188, 1192 (Miss.2011).

. Issues I and II address the same issue-the indictment-and will be discussed together.

. Winters v. State, 52 So.3d 1172, 1174 (Miss.2010); see URCCC 7.06.

. URCCC 7.06.

. Winters, 52 So.3d at 1175.

. URCCC 7.09; see Nathan v. State, 552 So.2d 99, 105 (Miss.1989); Gowdy v. State, 56 So.3d 540, 547-48 (Miss.2011) (Pierce J., dissenting).

. Nathan, 552 So.2d at 107 (citing Ellis v. State, 469 So.2d 1256, 1258 (Miss.1985)); see Shelby v. State, 246 So.2d 543, 545 (Miss.1971); see also Wilson v. State, 935 So.2d 945, 949 (Miss.2006).

. Gowdy, 56 So.3d at 545.

. Id.

. Although Nathan v. State was decided in 1989, the habitual-offender statutes have remained the same.

. Nathan, 552 So.2d at 105.

. Miss.Code Ann. § 99-19-83 (Rev.2007).

. Nathan, 552 So.2d at 105.

. Id. at 106.

. Id.

. Miss.Code Ann. § 99-19-81 (Rev.2007).

. Nathan, 552 So.2d at 107.

. Id.

.Id.

. See Nathan, 552 So.2d at 107; Sanders, 219 So.2d at 916; see also URCCC 7.09.

. Issues III and IV also will be discussed together, as these issues concern the question of whether or not the trial court abused its discretion in allowing and/or denying evidence.

. Hargett v. State, 62 So.3d 950, 952-53 (Miss.2011); see Pitchford v. State, 45 So.3d 216, 246 (Miss.2010).

. URCCC 9.04.

. URCCC 9.04(I)(1)(2)(3).

. Hickman v. State, 73 So.3d 1156, 1160 (Miss.2011) (internal citations omitted).

. Redmond v. State, 66 So.3d 107, 110-11 (Miss.2011).

. Moore v. State, 534 So.2d 557, 559 (Miss.1988).

. Tate v. State, 912 So.2d 919, 925 (Miss.2005).

. Morgan v. State, 703 So.2d 832, 835 (Miss.1997).

. Hopson v. State, 625 So.2d 395, 400 (Miss.1993) (citing United States v. Cantu, 876 F.2d 1134, 1137 (5th Cir.1989)).

. Moore, 534 So.2d at 559.

. Id. (emphasis added)

. Long v. State, 52 So.3d 1188, 1192 (Miss.2011).