# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-00580-COA

| | |
|---|---|
| TERRIS TORRELL STEVENSON A/K/A TERRIS STEVENSON | APPELLANT/CROSS-APPELLEE |

v.

| | |
|---|---|
| STATE OF MISSISSIPPI | APPELLEE/CROSS-APPELLANT |


| | |
|---|---|
| DATE OF JUDGMENT: | 03/29/2013 |
| TRIAL JUDGE: | HON. M. JAMES CHANEY JR. |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF GEORGE T. HOLMES EUGENE A. PERRIER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE JOSEPH LANE CAMPBELL |
| DISTRICT ATTORNEY: | RICHARD EARL SMITH JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF DOMESTIC VIOLENCE, THIRD OFFENSE, AND SENTENCED TO TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY A $1,000 FINE |
| DISPOSITION: | AFFIRMED: 01/20/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., MAXWELL AND FAIR, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     Terris Torrell Stevenson appeals his conviction of felony simple domestic violence.

Stevenson argues that the prosecutor's improper statement during closing argument was

reversible error. On cross-appeal, the State argues that the trial court erred when it denied the State's motion to amend the indictment. We find no error and affirm.

**FACTS**

¶2. Stevenson was indicted for felony domestic violence, third offense, pursuant to Mississippi Code Annotated section 97-3-7(3)(b) (Rev. 2014). The indictment also included a habitual-offender enhancement pursuant to Mississippi Code Annotated section 99-19-83 (Supp. 2014).

¶3. Stevenson and Dalasi Taylor had been in a relationship. They dated for almost three years. Six to eight months after their relationship ended, on March 31, 2012, Taylor was walking with a "friend guy" on Crawford Street in Vicksburg, Mississippi, when Stevenson drove by and stopped his car. Stevenson got out of his car, told Taylor he loved her and wanted her back. Taylor testified that, although she was scared, she did not run or scream. She got into Stevenson's car. A policeman pulled up and instructed Taylor to drive Stevenson's car, because Stevenson appeared intoxicated.

¶4. When Taylor stopped at a stop sign, Stevenson slapped Taylor in her face, as he thought that Taylor's "guy friend" had paid for her to have a manicure. They then went to a store, where Stevenson took the $40 that Taylor had in her possession to purchase gas for his car. Taylor testified that she paid for the gas because she was scared. They then drove to the Waltersville Estates apartment complex, where Stevenson got out of the car and took the keys. Taylor remained in the car, while Stevenson visited one of the apartments. He then returned to the car and took Taylor to an apartment where his daughter lived.

2

¶5. Taylor testified that, once at the apartment, Stevenson told her to remove all her clothes. He then hit her with an electric cord. She also testified that Stevenson hit her on the head with the heel of a stiletto boot.

¶6. Taylor testified that, after the incident, Stevenson called her multiple times and asked her to drop the charges, even though Taylor had obtained a restraining order against him. Stevenson arranged to meet Taylor at the police station, which she did. Taylor requested the police to drop the restraining order as well as the charges against Stevenson.

¶7. Beverly Prentiss was a domestic-violence investigator with the Vicksburg Police Department. She was called to the police department to interview Taylor, who was with her mother. Investigator Prentiss testified that Taylor appeared upset and emotional, and was crying. Investigator Prentiss took pictures of the wounds on Taylor's body. The pictures were introduced into evidence.

¶8. Investigator Prentiss also testified that Stevenson appeared with Taylor at the police station. Stevenson told Investigator Prentiss that Taylor wanted to drop the restraining order because the beating was due to consensual "kinky sex." When Investigator Prentiss asked her if this was true, Taylor agreed. Based on this encounter, the protective order was dismissed. Despite this action, Investigator Prentiss testified that Taylor's demeanor at the time seemed "[c]oerced, guided, [and] controlled." Investigator Prentiss further testified that Stevenson had two prior domestic-violence convictions, which Taylor knew about, yet he served no jail time on either conviction. She explained to the jury that a third domestic-

3

violence charge is a felony.

¶9. Stevenson was convicted of felony domestic violence. Following a presentencing investigation and sentence-enhancement proceeding, Stevenson was sentenced to serve ten years as a non-habitual offender. Stevenson filed both a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial, and an amended motion, which the trial court denied. It is from this judgment that Stevenson now appeals.

**ANALYSIS**

1. *Whether the trial court erred when it failed to either sua sponte declare a mistrial or instruct the jury when the State made reference during closing argument to Stevenson possibly not going to jail.*

¶10. Stevenson argues that the prosecutor made an improper statement during closing argument:

> Now you [the jury] have got to go back there and deliberate, and you have to decide whether or not a simple assault has occurred. That's your decision. You have to go back here and look at these things. Look at these welts on her leg. She came in here and told you about it. They're going to say, oh, she wanted to drop charges. She obviously doesn't want to drop charges if she's going to take that witness stand and be judged. It's even in your jury instructions. Congratulations. Now you've [(Taylor)] got to come testify. In the jury instructions, it even says judge her credibility. Be judged one more time for what you did, for taking a beating. Be judged because your restraining order failed. And you know that he's [(Stevenson)] not going to jail for any length of time on simple assault.

Stevenson argues that the last sentence that referred to his potential sentence was improper. *Marks v. State*, 532 So. 2d 976, 983 (Miss. 1988). The State responds that the remarks were taken out of context and actually reflect the victim's state of mind. The State also argues that

4

Stevenson's failure to object to the closing arguments at trial constitutes a waiver of the issue for appellate review.

¶11.    While attorneys are allowed wide latitude in presenting their cases to a jury, "prosecutors are not permitted to use tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury." *Sheppard v. State*, 777 So. 2d 659, 661 (¶7) (Miss. 2000) (citing *Hiter v. State*, 660 So. 2d 961, 966 (Miss. 1995)). The standard of review for "lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." *Slaughter v. State*, 815 So. 2d 1122, 1130 (¶45) (Miss. 2002) (citing *Sheppard*, 777 So. 2d at 660 (¶7)).

¶12.    To determine whether a prosecutor's closing remarks were reversible error, this Court applies the two-part test adopted in *Spicer v. State*, 921 So. 2d 292, 318 (¶55) (Miss. 2006) (modified by *Brown v. State*, 986 So. 2d 270, 286 (¶16) (Miss. 2008), and partially abrogated by *O'Connor v. State*, 120 So. 3d 390, 400-01 (¶¶28-29) (Miss. 2013)). First, we review the remarks to determine if they were improper. *Id.* If so, then we analyze whether the remarks prejudicially affected the rights of the accused. *Id.* "It must be clear beyond a reasonable doubt[,] that absent the prosecutor's comments, the jury could have found the defendant guilty." *Id.*

¶13.    Before applying this test, we must determine if defense counsel objected to the statement or if defense counsel invited the statement in light of the surrounding

5

circumstances. *Id.* at 317-18 (¶¶52-53). "[I]f no contemporaneous objection is made, the error, if any, is waived." *Slaughter*, 815 So. 2d at 1130-31 (¶47) (quoting *Walker v. State,* 671 So. 2d 581, 597 (Miss. 1995)). Here, we find that this issue was waived. The record is clear that Stevenson made no contemporaneous objection at trial.

¶14. In addition, we also find that the comments did not prejudicially affect the rights of Stevenson. The comments more so reflected the state of mind of the victim, as opposed to making a reference to Stevenson's potential sentence. We do not find a plain-error exception to the contemporaneous-objection requirement. Therefore, the issue was not properly preserved for review by this Court. We find that this issue has no merit.

> 2.      *Whether the trial court erred when it denied the State's motion to amend the indictment.*

¶15. On cross-appeal, the State asks this Court to find the trial court in error when it denied the State's motion to amend the indictment pursuant to Rule 7.09 of the Uniform Rules of Circuit and County Court. The State sought an amendment to Stevenson's indictment at the sentencing hearing. According to his indictment, Stevenson was initially charged for the felony of domestic-violence, third offense, with the charge enhanced as a habitual offender pursuant to Mississippi Code Annotated section 99-19-83.

¶16. However, the State discovered after the trial that Stevenson did not meet the requirements of section 99-19-83, and instead sought to amend the indictment to charge Stevenson as a habitual offender under Mississippi Code Annotated section 99-19-81 (Supp. 2014), which is a lesser sentence enhancement. The trial court denied the State's motion to

6

amend the indictment, and sentenced Stevenson without any sentence enhancement. Stevenson responds that the trial court acted within its discretion in the denial of the motion to amend the indictment.

¶17. Mississippi law provides "that a change in the indictment is permissible if it does not materially alter facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant's case." *Ellis v. State*, 469 So. 2d 1256, 1258 (Miss. 1985) (citations omitted). Further, Rule 7.09 provides:

> All indictments may be amended as to form but not as to the substance of the offense charged. Indictments may also be amended to charge the defendant as [a] habitual offender or to elevate the level of the offense where the offense is one which is subject to enhanced punishment for subsequent offenses and the amendment is to assert prior offenses justifying such enhancement (e.g., driving under the influence, Miss. Code Ann. § 63-11-30). Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.

The Mississippi Supreme Court has previously held that post-trial amendments to an indictment related to a criminal defendant's habitual-offender status are improper, characterizing such post-trial amendments as "an unfair surprise." *Gowdy v. State*, 56 So. 3d 540, 545 (¶19) (Miss. 2010). The *Gowdy* Court further noted:

> [N]otice of the charge includes notice of the applicable minimum and maximum penalties. Under [Uniform] Rule [of Circuit and County Court] 8.04(A)(4)(b), before a defendant can plead guilty, the trial court has a duty to ensure that he "understands the nature and consequences of the plea, and the maximum and minimum penalties provided by law." The rule should not be different for defendants who choose to exercise their right to trial by jury.

7

*Gowdy*, 56 So. 3d at 546 (¶21).

¶18.    Here, we find that the trial court acted within its discretion to deny the State's motion to amend the indictment.  The record is clear that the State filed the motion to amend the indictment well after trial and before the sentencing hearing.  And, while the State cites *Beal v. State*, 86 So. 3d 887, 893 (¶14) (Miss. 2012), to support its argument that the trial court erred when it denied the State's motion to amend the indictment, *Beal* is clearly factually distinguishable from the present case.  The motion to amend the indictment in *Beal* was filed before trial.  *Id.* at 892 (¶12).  Further, the supreme court in *Beal* upheld the trial court's granting of the State's motion to amend the indictment, recognizing that such decisions are within the discretion of the trial court, as the court determined that amendments to an indictment concerning habitual status are permissible.  *Id.* at 893 (¶13).  Accordingly, the trial court did not abuse its discretion when it denied the State's motion to amend the indictment filed well after the conclusion of the trial.  Therefore, this issue has no merit.

¶19.    **THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT OF CONVICTION OF DOMESTIC VIOLENCE, THIRD OFFENSE, AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY A $1,000 FINE, IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO WARREN COUNTY.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, CARLTON AND FAIR, JJ., CONCUR.  ROBERTS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY MAXWELL AND JAMES, JJ.**

**ROBERTS, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶20.    While I concur with the affirmation of Stevenson's conviction, I must respectfully

8

dissent from the majority's finding that the circuit court did not err when it denied the State's request to conduct a habitual-offender sentencing hearing under section 99-19-81. I would reverse the circuit court's judgment and remand for a new sentencing hearing, with the State allowed to present evidence of Stevenson's habitual-offender status pursuant to section 99-19-81. By the grand jury indicting Stevenson as a section 99-19-83 habitual offender, Stevenson was necessarily charged also as a section 99-19-81 habitual offender.

¶21. On July 30, 2012, a Warren County grand jury indicted Stevenson on one count of felony domestic violence as a habitual offender pursuant to section 99-19-83. Stevenson's indictment regarding his habitual-offender status read, in pertinent part: "Stevenson has twice previously been convicted of felonies upon charges separately brought and arising out of separate incidents at different times, and has been sentenced to separate terms of one year or more in a State or Federal Penal Institution[.]" According to the indictment, the underlying crimes that served as the basis for the enhancement were a 1991 manslaughter conviction, a crime of violence, in Memphis, Tennessee, for which Stevenson "was sentenced to serve a term of three years . . . and did serve one year or more[,]" and a 2003 conviction on four counts of aggravated robbery, also crimes of violence, in Memphis, Tennessee, for which Stevenson "was sentenced to serve a term of [ten] years in a penal institution and did serve one year or more."[1]

---

[1] Stevenson was convicted of manslaughter for shooting a man five times and killing him. His conviction of four counts of aggravated robbery arose out of acts on the same day on charges not separately brought.

¶22. Stevenson elected to go to trial on March 18, 2013, and a jury convicted him on one count of felony domestic violence. After the jury's verdict, but before Stevenson's sentencing hearing, the State first discovered it was unlikely that it would be able to meet every element as required under section 99-19-83, because even though Stevenson had been sentenced to three years in the Tennessee Department of Corrections' custody for manslaughter, it appeared he had served only nine months in the Shelby County Detention Facility before he was released. The State moved to amend Stevenson's indictment to reduce his true status to a non-violent habitual offender under section 99-19-81, which would subject Stevenson to ten years, the maximum, to be served without the possibility of a reduced sentence, a suspended sentence, parole, or probation.[2] The circuit court refused the State's request to proceed with a sentencing hearing as a section 99-19-81 non-violent habitual offender, and it sentenced Stevenson without a habitual-offender sentence enhancement.[3]

¶23. I first note that the appellee/cross-appellant, the State, proceeds on its cross-appeal under the authority of Mississippi Code Annotated section 99-35-103(c) (Rev. 2007), which

---

[2] By being sentenced as a non-habitual offender, it appears Stevenson would be eligible for trusty status (Mississippi Code Annotated section 47-5-138.1 (Rev. 2011)); earned-release supervision (Mississippi Code Annotated section 47-5-138 (Supp. 2014)); or parole (Mississippi Code Annotated section 47-7-3 (Supp. 2014)).

[3] Ironically, if the State had made no motion to amend the indictment, proceeded to a habitual-offender sentencing hearing, and admitted that the proof failed to establish Stevenson actually served one year or more in custody for his manslaughter conviction, the circuit court would still have full authority to sentence Stevenson as a section 99-19-81 habitual offender. *See Beal v. State*, 86 So. 3d 887, 892-3 (¶¶13-14) (Miss. 2012) (citing *Nathan v. State*, 552 So. 2d 99, 105-107 (Miss. 1989)); *Reed v. State*, 31 So. 3d 48, 56 (¶33) (Miss. Ct. App. 2009).

provides that the State:

> [M]ay prosecute an appeal from a judgment of the circuit court in a criminal cause . . . [f]rom a ruling adverse to the [S]tate . . . in every case in which the defendant is convicted and prosecutes an appeal; and the case shall be treated as if a cross[-]appeal had been formally presented by the [S]tate. All questions of law thus presented shall be decided by the [Mississippi] Supreme Court.

Stevenson appealed his conviction, and the State cross-appealed on the adverse ruling by the circuit court, which denied the State's request to conduct a section 99-19-81 habitual-offender sentencing hearing. Thus, the State's cross-appeal is properly before this Court.

¶24. There are two companion statutes that relate to habitual-offender sentencing. The first is found in section 99-19-81, and reads:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

Under this statute, the State must prove, beyond a reasonable doubt, the following:

1. Two prior felony convictions,

2. Upon charges separately brought and arising out of separate incidents at different times, and

3. Sentences of separate terms of one year or more for each conviction.

If the State proves these elements, the circuit court must impose a sentence of the maximum term of imprisonment for the crime committed, without eligibility for a reduced sentence, a

11

suspended sentence, parole, or probation.

¶25.   The companion habitual-offender statute is codified in section 99-19-83.  Section 99-19-83 states:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more . . . in any state and/or federal penal institution, . . . and where any one (1) of such felonies shall have been a crime of violence . . . , shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole, probation or any other form of early release from actual physical custody within the Department of Corrections.

Section 99-19-83 contains the exact same first three elements as section 99-19-81, but it adds two other elements:

4.     The defendant actually served one or more year in custody on each conviction, and

5.     One of the prior convictions was a crime of violence.

However, the sentence imposed under section 99-19-83 is life imprisonment without the possibility of a reduced sentence, a suspended sentence,  parole, or probation.  As a consequence, any accused felon properly and timely indicted as a habitual offender under section 99-19-83 is also, necessarily, properly and timely indicted under the lesser habitual-offender statute, section 99-19-81.

¶26.   As the majority notes, the Mississippi Supreme Court has held that a post-trial amendment to an indictment adding a habitual-offender enhancement for the first time is improper because the defendant does not have notice of the maximum and minimum

12

sentences; thus, it is said to be an "unfair surprise." *Gowdy v. State*, 56 So. 3d 540, 545-46 (¶¶19-21) (Miss. 2010). At first blush, it would appear that *Gowdy* would preclude the State from seeking an amendment to Stevenson's indictment to change his habitual-offender enhancement because it was done after trial; however, I submit that because the State was seeking to amend an indictment already containing a habitual-offender enhancement to a less severe habitual-offender enhancement, the concern of "unfair surprise" in *Gowdy* is clearly absent. Stevenson certainly had notice for nine months before trial that the State was seeking an enhanced sentence of a life term as a habitual offender, and he was aware of the elements that the State would have to prove under that enhancement. As discussed above, the first three elements of section 99-19-81 and section 99-19-83 are identical. Stevenson's indictment provided him notice of all of the elements found in section 99-19-83; therefore, it follows that he also had notice of all of the elements found in section 99-19-81. The State's request could constitute no "unfair surprise" to Stevenson.

¶27. Additionally, it is established that an amendment to an indictment is permitted if it is an amendment of form and not of substance. *See Jones v. State*, 912 So. 2d 973, 976 (¶9) (Miss. 2005) (citing *Rhymes v. State*, 638 So. 2d 1270, 1275 (Miss. 1994)). The test to determine whether an amendment to an indictment is one of form or substance is also well established. "[I]f the change does not materially alter facts which are the essence of the offense on the face of the original indictment or if the change does not materially alter a defense to the original indictment so as to prejudice the defendant's case[,]" then it is an

13

amendment to the form of the indictment and not the substance. *Chandler v. State*, 789 So. 2d 109, 111 (¶4) (Miss. Ct. App. 2001). Here, the amendment only affected the sentencing portion of Stevenson's case, came as no "unfair surprise" to Stevenson, and was not a defense to the underlying charge of felony domestic violence; thus, the amendment was one of form and not substance. *See Williams v. State*, 766 So. 2d 815, 816-18 (¶¶5,7,10) (Miss. Ct. App. 2000).

¶28. I submit that since Stevenson was aware that the State was seeking an enhancement, he had notice of the elements of both habitual-offender statutes, and he was not unfairly surprised by the amendment. Therefore, the circuit court erred in denying the State's amendment, and I would reverse and remand to the circuit court for another sentencing hearing.

¶29. There is no double-jeopardy concern regarding Stevenson being resentenced as a section 99-19-81 habitual offender. In *Ellis v. State*, 520 So. 2d 495, 496 (Miss. 1988), the supreme court stated: "[A] habitual offender's sentencing hearing, as a trial on the sentence, constitutes jeopardy; therefore, when a defendant's conviction has been overturned due to a failure of proof at trial, the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble." Relying on *Ellis*, this Court held in *Short v. State*, 929 So. 2d 420, 426 (¶18) (Miss. Ct. App. 2006): "[T]he double jeopardy clause of the Mississippi Constitution of 1890 prohibits the introduction of any new evidence on remand to establish . . . habitual offender[-]status." However, this is not a case

14

in which the State failed to prove the habitual-offender elements. When the State has never had an opportunity to prove habitual-offender status at the first trial, and, on appeal, the case is reversed, there is no double-jeopardy violation when the State proves habitual-offender status on a retrial on sentencing. *See Gray v. State*, 605 So. 2d 791, 793 (Miss. 1992) (Although initially indicted as a habitual offender, Gray's "status as a habitual offender was not determined until after the sentencing trial" because he was initially sentenced to death. "Therefore, since Gray's status as a habitual offender was not previously determined, the present finding of habitual[-]offender status was not barred by double jeopardy."). Simply put, the State never had a chance to prove Stevenson's habitual-offender status because the circuit court denied the motion. Upon remand, the State should be permitted to submit proof, if it can, of Stevenson's habitual-offender status. If the State can prove the elements of section 99-19-81 habitual-offender statute beyond a reasonable doubt, the circuit court should sentence Stevenson as a section 99-19-81 habitual offender.

¶30. Accordingly, I concur with the majority's affirmation of Stevenson's conviction, but for the above reasons, I respectfully dissent from the majority's denial of the State's cross-appeal.

**MAXWELL AND JAMES, JJ., JOIN THIS OPINION.**

15